UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SABRINA M. SANTORO, | ) | |
| Plaintiff | ) ) ) | |
| vs. | ) ) | CAUSE NO. 3:19-CV-188 RLM |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | |
| Defendant | ) ) | |

OPINION AND ORDER

Sabrina Santoro seeks judicial review of the final decision of the Commissioner of Social Security's decision denying her applications for disability insurance benefits and Supplemental Security Income under the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated in open court at today's oral argument and summarized below, the court reverses the Commissioner's decision and remands for further proceedings.

Ms. Santoro was 31 in August 2014, the alleged onset of disability.[1] She applied for DIB and SSI based on a variety of physical and mental impairments, including IBS and related symptoms, depression, and anxiety. Her applications were denied initially, upon reconsideration, and following an administrative

---

[1] Ms. Santoro alleged disability as of January 27, 2011 in her applications, but had previously been denied benefits through August 26, 2014 (the date of the final decision denying her prior application). Accordingly, the ALJ used August 26, 2014 as her starting point.

hearing in November 2017. The ALJ concluded at that hearing that Ms. Santoro had the residual functional capacity to perform light work with limitations, including her past relevant work as a receptionist and billing clerk and, alternatively, other work that existed in significant numbers in the national economy, and therefore wasn't disabled within the meaning of the Act from August 2014 through February 22, 2018. More specifically, the ALJ found that:

- Ms. Santoro had severe physical and mental impairments (including GERDS, IBS, chronic diarrhea, abdominal pain, obesity, affective disorders (depression, adjustment disorder, and anxiety), scoliosis, insomnia and leg pain), and some non-severe physical impairments (including plantar fasciitis and hand tremors).

- Her impairments, alone and in combination, didn't meet or equal the severity of any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1. Specifically 1.00 (musculoskeletal disorders, 1.04 (disorders of the spine), 5.06 (inflammatory bowel disease (IBC/IBS), 12.04 (depressive disorders), 12.06 (anxiety disorders), 12.08 (personality and impulse control disorders) and SSR 02-1p (obesity).

- Ms. Santoro's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms [was] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] opinion."

- The opinions of the state agency medical consultants (Drs. Hasanadka and Sands), state agency psychological consultants (Drs. Garcia and Unversaw), consulting/examining physicians (Drs. Kennedy, Schultz, and Berry), and statements made by Ms. Santoro's cousin, April Housman, were entitled to "some weight", but were issued in 2015 and 2016, didn't include "newer evidence", and/or were not "entirely consistent with the medical evidence or other evidence discussed in th[e] opinion."

- Ms. Santoro had mild limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing herself, and "a moderate limitation in concentrating,

2

persisting, or maintaining pace" and wouldn't be able to do "fast-paced production", but retained the functional capacity to perform light work with the following additional limitations – she could: stand/walk at least 2 hours in an 8-hour workday and sit at least 6 hours in an 8-hour workday, but needed to alternate positions for 1-2 minutes every hour; could occasionally stoop, climb stairs or ramps, balance, kneel, crouch and crawl; could never climb ladders, ropes, or scaffolds.

- Based on the vocational expert's testimony, Ms. Santoro could perform her past relevant work as a receptionist and billing clerk, and/or other work that existed in significant numbers in the national economy, including work as a collator operator, router, and information clerk.

[AR 18-26].

When the Appeals Council denied Ms. Santoro's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Ms. Santoro's arguments on appeal rely heavily on her testimony that needed to use the restroom 15 to 20 minutes at a time, 10 to 20 times per day. It's easy to agree with Ms. Santoro that such a person would have difficulty finding employment, whether as a receptionist a, a collator, or anything else. But the ALJ discussed Ms. Santoro's claims of chronic diarrhea, did so in great detail (six paragraphs spanning three pages) and concluded that the intensity, persistence in limiting effects of Ms. Santoro's chronic diarrhea were far less than what Ms. Santoro had described. That fact-finding finds substantial support in the record as a whole.

The ALJ didn't rely soley on Ms. Santoro's daily activities as proof of her

3

ability to work in the labor market, as Ms. Santoro contends. She discussed those things in the context of evaluating the limitations arising from Ms. Santoro's chronic diarrhea and mental impairments, rather than translating them directly to the workplace.

The ALJ found that Ms. Santoro had mild limitations in understanding, remembering, and applying information, in interacting with others, and in adapting or managing herself, and that she had moderate limitations and concentrating, persisting, or maintaining pace. As to the last point, the ALJ noted that Ms. Santoro's own opinions about her abilities flipped 180 degrees between September and December 2015. Those findings, too, are well explained in the ALJ's decision and drawn from the evidence of record.

But that doesn't finish the inquiry into the ALJ's determination of Ms. Santoro's residual functional capacity. Ms. Santoro contends that the ALJ failed to explain the basis for her findings relating to the limitation on consentration, persistence, or pace and inability to do "fast-paced production", and cites DeCamp v. Berryhill, 916 F.3d 671, 675 (7th Cir. 2019), in which the court of appeals reversed the Commissioner when the ALJ appeared to have used the pacing of the task as a proxy for moderate limitations on concentration, persistence, and pace. The Commissioner is correct that in the Burmester v. Berryhill, 920 F.3d 507 (7th Cir. 2019), the court of appeals explained that this wasn't a bright line rule, and that the "fast-paced production" limitation was acceptable when the ALJ had

4

included the claimant's moderate limitations in the questions to the vocational expert. But the otherwise thorough work of this ALJ doesn't appear to have encompassed including within her hypotheticals to the vocational expert the mild and moderate limitations the ALJ ultimately found in her opinion. Without those having been included, the DeCamp case, even as clarified by Burmester, requires a reversal. Other than the fast-paced production limitation, Ms. Santoro's limitations don't appear to have been included in any hypothetical, and the fast-paced production limitation can't be used as a proxy for those specific limitations. Burmester v. Berryhill, 920 F.3d at 511-512; DeCamp v. Berryhill, 916 F.3d at 675-676.

Accordingly, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

SO ORDERED.

ENTERED:   January 27, 2020

                                           /s/ Robert L. Miller, Jr.
                                           Judge
                                           United States District Court